**LAQUER, URBAN, CLIFFORD & HODGE LLP**
Marija Kristich Decker, State Bar No. 207387
  Email: Decker@luch.com
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Tel: (626) 449-1882 | Fax: (626) 449-1958

Counsel for Plaintiffs, Trustees of the Operating Engineers Pension Trust, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST, TRUSTEES OF THE OPERATING ENGINEERS LOCAL 12 DEFINED CONTRIBUTION TRUST, FUND FOR CONSTRUCTION INDUSTRY ADVANCEMENT, ENGINEERS CONTRACT COMPLIANCE COMMITTEE FUND, CONTRACT ADMINISTRATION FUND, SOUTHERN CALIFORNIA PARTNERSHIP FOR JOBS FUND, and OPERATING ENGINEERS WORKERS COMPENSATION TRUST,<br><br>        Plaintiffs,<br><br>   v. | CASE NO.:  2:19-cv-6546<br><br>**COMPLAINT FOR BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND VIOLATION OF ERISA § 515 [29 U.S.C. § 1145]** |

|   |   |
|---|---|
| 1 | WEST COAST BORING, INC., a |
| 2 | California corporation, |
| 3 | Defendant. |

Plaintiffs, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, Trustees of the Operating Engineers Local 12 Defined Contribution Trust, Fund for Construction Industry Advancement, Engineers Contract Compliance Committee Fund, Contract Administration Fund, Southern California Partnership for Jobs Fund, and Operating Engineers Workers Compensation Trust, complain and allege:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction of this case pursuant to section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. §1132(e)(1)], which grants the United States District Courts jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA [29 U.S.C. §1132(a)(3)] to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA [29 U.S.C. §1132(f)].

2.  This Court also has jurisdiction of this case pursuant to section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA") [29 U.S.C. §185(a)], which grants the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

///
///

1369696
**COMPLAINT**

3. Venue is proper in this Court pursuant to section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)], and section 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the Plaintiffs' Trusts (defined below) are administered, the signatory union maintains union offices, and where the contractual obligation is to be paid.

4. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §1367(a).

## PARTIES

5. Plaintiffs, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, and Trustees of the Operating Engineers Local 12 Defined Contribution Trust (collectively "Trustees"), are the trustees of five express trusts (collectively "Trusts") created pursuant to written declarations of trust ("Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12 ("Local 12"), and various employer associations in the construction industry in Southern California and Southern Nevada. The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)]. All of the Trusts referenced above are administered by the Trustees in Los Angeles County. Plaintiffs, as Trustees of the Trusts, are "fiduciar[ies]" with respect to the Trusts as defined in section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)]. Plaintiff, Fund for Construction Industry Advancement, is an employer established and administered trust formed and created to protect and expand the interests of the construction industry. Plaintiff, Engineers Contract Compliance Committee Fund, was established by Local 12 in accordance with Section 6(b) of the Labor Management Cooperation Act of 1978 in order to improve job security and organizational effectiveness. Plaintiff, Southern California Partnership for Jobs Fund

**COMPLAINT**

1369696

is an industry-wide advancement fund established by the employers and Local 12. Plaintiff, Operating Engineers Workers Compensation Trust is a trust fund established by Local 12 and certain employers to administer worker's compensation benefits. All plaintiffs are collectively referred to herein as the "Plaintiffs."

6. At all times material herein, Local 12 has been a labor organization representing employees in the building and construction industry in Southern California and Southern Nevada, and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 185(a)].

7. Plaintiffs are informed and believe, and thereon allege, that at all times material herein, Defendant, West Coast Boring, Inc. ("West Coast Boring"), was and is a California corporation with its principal place of business in Bakersfield, California.

## EXECUTION OF BARGAINING AGREEMENT
## AND STATUS OF PARTIES

8. On or about August 17, 2000, West Coast Boring executed and delivered to Local 12 a written collective bargaining agreement ("Agreement") whereby West Coast Boring agreed to be bound by the terms and conditions, with certain exceptions, of certain written and existing agreements between various multi-employer associations and Local 12. In particular, West Coast Boring agreed to be bound by the written Master Construction Agreement ("Master Agreement") in effect between Local 12 and the Southern California Contractors Association, a multi-employer association ("Association"), as well as the incorporated Trust Agreements. At all times material herein, the Master Agreement has been a written collective bargaining agreement in effect between the Association and Local 12.

9. On or about August 17, 2000, West Coast Boring executed written acknowledgments and acceptances of each of the Trust Agreements.

///

10. West Coast Boring is an "*employer*," as that term is understood in the Master Agreement and related Trust Agreements.

11. West Coast Boring is an "*employer*" as defined and used in section 3(5) of ERISA [29 U.S.C. § 1002(5)], and therefore, West Coast Boring is "*obligated to make contributions to a multiemployer plan*" within the meaning of section 515 of ERISA [29 U.S.C. § 1145]. Plaintiffs are informed and believe, and thereon allege, that West Coast Boring is also an "*employer*" engaged in "*commerce*" in an "*industry affecting commerce*," as those terms are defined and used in sections 501(1) and 501(3) of the LMRA [29 U.S.C. §§ 142(1), 142(3)], and within the meaning and use of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

## CLAIM FOR RELIEF

### Breach of Written Collective Bargaining Agreement and Violation of § 515 of ERISA [29 U.S.C. § 1145]

12. Plaintiffs hereby refer to, and incorporate herein, paragraphs 1 through 11 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

13. Section 515 of ERISA [29 U.S.C. § 1145], provides *"[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."*

14. West Coast Boring is an "*employer*" as defined and used in § 3(5) of ERISA [29 U.S.C. § 1002(5)], and is *"obligated to make contributions to a multiemployer plan"* within the meaning and use of section 515 of ERISA [29 U.S.C. § 1145].

15. By the terms and provisions of the Agreement, Master Agreement and related Trust Agreements, and at all times material herein:

///

a. West Coast Boring agreed to prepare and submit true, complete and accurate written monthly contribution reports ("Monthly Reports") to Plaintiffs in a timely manner showing the identity of its employees performing work covered by the Master Agreement, the number of hours worked by or paid to these employees, and based upon the hours worked or amounts paid to employees, the proper calculation of the fringe benefit contributions due for such employees. At all times material herein, West Coast Boring has been obligated to submit monthly reports and pay fringe benefit contributions to Plaintiffs at their place of business in Pasadena, California, on or before the 10th day of each successive month;

b. West Coast Boring agreed to permit Plaintiffs and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions have been properly paid pursuant to the Master Agreement and related Trust Agreements; and

c. West Coast Boring agreed to pay to Plaintiffs fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by, or paid to, applicable employees. These amounts are due and payable at the Trusts' administrative offices in Pasadena, California.

16. The Master Agreement further provides that if any employee who performs covered work is paid in a manner other than an hourly wage, West Coast Boring must pay Plaintiffs fringe benefit contributions on behalf of that employee based on 40 hours of work per week. Plaintiffs are informed and believe, and thereon allege, that at all times material to this action Robert Sanders performed work for West Coast Boring that was covered by the Master Agreement for which he was paid other than an hourly wage.

17. West Coast Boring submitted Monthly Reports to Plaintiffs reflecting work performed by West Coast Boring's employees during the months of September 2018 through February 2019, but failed to pay or to timely pay the contributions due. These Monthly Reports are admissions of the hours worked by West Coast Boring's

employees and the fringe benefit contributions owed. After crediting any and all payments received, if any, West Coast Boring owes fringe benefit contributions of at least $20,532.62 based on its Monthly Reports for work performed by its employees during the months of September 2018 through February 2019.

18. West Coast Boring has failed to submit Monthly Reports to Plaintiffs reflecting work performed by West Coast Boring's employees during the months of April 2019 through the present in violation of its statutorily-mandated obligation under section 515 of ERISA [29 U.S.C. § 1145].

19. Plaintiffs are informed and believe, and thereon allege, that at all times material to this action, Mr. Sanders was a principal of West Coast Boring. West Coast Boring paid Mr. Sanders other than an hourly wage for his work, which included work covered by the Master Agreement. On or about March 17, 2011, West Coast Boring signed a written Principal Employee Program Participation Agreement (the "PEPPA"). The PEPPA permitted West Coast Boring to report and pay contributions on behalf of Mr. Sanders at a flat monthly rate in lieu of paying contributions on his behalf based on 40 hours of work per week, as provided by the Master Agreement. The PEPPA provides that if West Coast Boring fails to abide by the terms and conditions of the PEPPA, West Coast Boring must pay fringe benefit contributions on behalf of Mr. Sanders based on 40 hours of work per week, as provided in the Master Agreement.

20. West Coast Boring breached the PEPPA by failing to pay the flat rate contributions for Mr. Sanders for work performed during the months of September 2018 through June 2019. West Coast Boring violated the PEPPA, Agreement, Master Agreement and Trust Agreements, and its statutorily-mandated obligation under section 515 of ERISA [29 U.S.C. § 1145], to timely pay fringe benefit contributions to Plaintiffs pursuant to the PEPPA, Agreement, Master Agreement and related Trust Agreements for that work. Because West Coast Boring breached the PEPPA by failing to pay the flat rate contributions for Mr. Sanders during the time period of

September 2018 through June 2019 under the PEPPA and the Master Agreement, West Coast Boring is obligated to pay to Plaintiffs fringe benefit contributions of $53,488.06 based on 40 hours of work per week on behalf of Mr. Sanders for the months of September 2018 through June 2019.  West Coast Boring is obligated to pay to Plaintiffs fringe benefit contributions totaling at least $74,020.68.  This amount is due and payable at Plaintiffs' administrative offices in Pasadena, California.

21. Plaintiffs are informed and believe, and based thereon allege, that West Coast Boring has failed to pay certain additional amounts of fringe benefit contributions not presently known to Plaintiffs.  These additional amounts will be established by proof at the trial herein.

22. West Coast Boring is "*delinquent*," as that term is used in the Master Agreement and related Trust Agreements.

23. Plaintiffs are informed and believe, and based thereon allege, that there is no legal excuse for West Coast Boring's breach of its obligations under the PEPPA, Master Agreement and related Trust Agreements in violation of section 515 of ERISA [29 U.S.C. § 1145].

24. West Coast Boring has failed to timely pay contributions and other amounts owed to Plaintiffs, accruing since September 2018.  Pursuant to the Agreement, Master Agreement, and Trust Agreements, West Coast Boring agreed that in the event West Coast Boring failed to pay fringe benefit contributions, or otherwise comply with the terms and provisions of the Master Agreement and related Trust Agreements, West Coast Boring would be considered delinquent with the Trusts and would pay Plaintiffs the greater of $25.00 per month or ten percent (10%) of the total amount then due as liquidated damages for each delinquency.

25. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, the Court shall award the plan: (i) the unpaid contributions, (ii) interest on the unpaid contributions, (iii) an amount equal to the greater of (a) interest on the unpaid contributions or (b)

liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under federal or state law) of the amount determined by the Court to be unpaid contributions, (iv) reasonable attorneys' fees and costs, and (v) such other legal or equitable relief as the Court deems appropriate. For purposes of section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], interest on unpaid contributions shall be determined by using the rate provided under the plan or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 6621.

26. Pursuant to the Master Agreement, related Trust Agreements, and section 502(g)(2)(C) of ERISA [29 U.S.C. § 1132(g)(2)(C)], West Coast Boring owes Plaintiffs liquidated damages of at least $7,402.07, plus additional amounts currently unknown to Plaintiffs that will be established by proof.

27. Pursuant to the Master Agreement, related Trust Agreements, and section 502(g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(B)], West Coast Boring owes Plaintiffs interest at the rates established pursuant to 26 U.S.C. § 6621 from the respective due dates on all unpaid fringe benefit contributions and other amounts due. The exact amount of interest owed by West Coast Boring to Plaintiffs will be established by proof.

28. By the Agreement, Master Agreement and related Trust Agreements, West Coast Boring agreed to pay Plaintiffs all legal and auditing costs in connection with the collection of any delinquency, whether incurred before or after litigation is, or was, commenced.

29. It has been necessary for Plaintiffs to engage legal counsel for the purpose of collecting said contributions and damages, and Plaintiffs are entitled to their reasonable attorneys' fees in connection therewith pursuant to the Agreement, Master Agreement, Trust Agreements, and section 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)]. The exact amount of the legal fees due and payable has not been ascertained at this time. These amounts shall be established by proof.

30. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)(E)], the Court may grant such other legal or equitable relief as the Court deems appropriate. As part of Plaintiffs' judgment, Plaintiffs shall request the Court to:

    a. Order West Coast Boring to post and deliver either a good faith deposit, or a performance bond issued in favor of Plaintiffs in an amount determined by the Court to be appropriate, and

    b. Order the creation of a constructive trust on all applicable property and order the transfer of the applicable property to the Trusts, and

    c. Order West Coast Boring to pay Plaintiffs all amounts due to the Trusts, including, but not limited to, all unpaid contributions, benefits, withholdings, damages, legal fees, audit costs and other expenses and damages incurred.

## PRAYER

WHEREFORE, as to all Claims for Relief, Plaintiffs pray for judgment against West Coast Boring as follows:

1. For unpaid fringe benefit contributions and other damages for breach of contract in the sum of $74,020.68 plus additional amounts as proved;

2. For liquidated damages in the sum of $7,402.07, plus additional amounts as proved;

3. For interest pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], and section 6621 of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 6621, or at the legal rate, in amounts as proved;

4. For audit costs in amounts as proved;

5. For reasonable attorneys' fees and costs of suit incurred;

6. For a good faith deposit or performance bond in favor of Plaintiffs in an amount equal to the total amount determined by this Court to be due to Plaintiffs, as proved; and

///

///

1369696

7. For such additional relief as this Court deems just and proper.

DATED:  July 29, 2019         LAQUER, URBAN, CLIFFORD & HODGE LLP

By:  /s/ - *Marija Kristich Decker*
        Marija Kristich Decker, Counsel for Plaintiffs

**WAIVER OF JURY RIGHT**

DATED:  July 29, 2019         LAQUER, URBAN, CLIFFORD & HODGE LLP

By:  /s/ - *Marija Kristich Decker*
        Marija Kristich Decker, Counsel for Plaintiffs