**O**
**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST, TRUSTEES OF THE OPERATING ENGINEERS LOCAL 12 DEFINED CONTRIBUTION TRUST, FUND FOR CONSTRUCTION INDUSTRY ADVANCEMENT, ENGINEERS CONTRACT COMPLIANCE COMMITTEE FUND, CONTRACT ADMINISTRATION FUND, SOUTHERN CALIFORNIA PARTNERSHIP FOR JOBS FUND, AND OPERATING ENGINEERS WORKERS COMPENSATION TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> WEST COAST BORING, INC., <br><br> Defendant. | Case No. 2:19-cv-6546-ODW (PLAx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [15]** |

## I. INTRODUCTION

Plaintiffs Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, Trustees of the Operating Engineers Local 12 Defined Contribution Trust, Fund For Construction Industry Advancement, Engineers Contract Compliance Committee Fund, Contract Administration Fund, Southern California Partnership For Jobs Fund, and Operating Engineers Workers Compensation Trust (collectively, the "Trust Funds" or "Plaintiffs"), brought suit against Defendant West Coast Boring, Inc. ("WCB") for delinquent contributions required by the collecting bargaining agreement ("CBA") between WCB and Local Union 12 ("Local 12"). The Trust Funds now move for entry of a default judgment against WCB. For the reasons discussed below, the Court **GRANTS** the Motion **IN PART**. (Mot. for Default J. ("Mot."), ECF No. 15.)[1]

## II. FACTUAL BACKGROUND

WCB and Local 12 entered into a CBA on August 17, 2000. (Compl. ¶ 8, ECF No. 1; Decl. of Bernardo Ramos ("Ramos Decl.") ¶ 8, ECF No. 17.) Under the CBA, WCB was obligated to make contributions to a multiemployer plan, and submit true, complete, and accurate written monthly contribution reports. (Compl. ¶¶ 14, 15.) WCB agreed to pay to Plaintiffs fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by, or paid to, applicable employees. (Compl. ¶ 15.) Per their agreement, if WCB paid any employee in a manner other than an hourly wage, WCB must pay Plaintiffs fringe benefit contributions on behalf of that employee based on a 40-hour work-week. (Compl. ¶ 16.) The Trust Funds also allege that, per the terms of the CBA, WCB agreed to comply with audits of payroll and related records to ensure all fringe

---

[1] After considering the moving papers, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

benefits were paid. (Compl. ¶¶ 15, 28.)

WCB submitted monthly reports from September 2018 through February 2019 but failed to pay the contributions due. (Compl. ¶ 17.) Plaintiffs allege WCB owes $17,915.40 in fringe contributions for this time period. (Compl. ¶ 17; Ramos Decl. ¶ 14.) Furthermore, WCB allegedly failed to provide monthly reports from April 2019 through the present, in violation of the CBA. (Compl. ¶ 18.)

Local 12 and WCB agreed to modify their agreement for WCB's principal employee Mr. Robert Sanders. (Compl. ¶¶ 16, 19.) On or about March 17, 2011, WCB signed a written Principal Employee Program Participation Agreement (the "PEPPA"), which permitted WCB to report and pay contributions on behalf of Mr. Sanders at a flat monthly rate in lieu of paying contributions based on a 40-hour work-week. (Compl. ¶ 19.) However, the PEPPA provides that if WCB fails to abide by the terms and conditions of the PEPPA, WCB must revert to paying fringe benefit contributions for Mr. Sanders based on a 40-hour work-week. (Compl. ¶ 19.)

Furthermore, Plaintiffs claim that WCB breached the PEPPA by failing to pay the flat rate contributions for Mr. Sanders for work performed during the months of September 2018 through June 2019. (Compl. ¶ 20.) As WCB violated PEPPA, it allegedly owes Plaintiffs fringe benefit contributions of $53,488.06 based on a 40-hour work-week for the months of September 2018 through June 2019. (Compl. ¶ 20.) Due to these violations, WCB became "delinquent" per the CBA and must pay the greater of $25.00 per month or ten percent (10%) of the total amount then due as liquidated damages for each delinquency. (Compl. ¶ 24.)

On July 29, 2019, the Trust Funds filed a complaint against WCB requesting payment of the underpaid contributions, prejudgment interest, liquidated damages, audit expenses, and reasonable attorneys' fees and costs. (*See* Compl.) The Trust Funds served the complaint on WCB on August 11, 2019. (Proof of Service, ECF No. 9.) WCB failed to timely respond to the complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). On September 10, 2019, the Trust Funds requested that the Clerk enter

default against WCB. (Req., ECF No. 11.) The Clerk entered a default on September 11, 2019. (Default by Clerk, ECF No. 12.) On October 10, 2019, the Trust Funds filed the instant Motion for Default Judgment. (*See* Mot.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant a default judgment after the Clerk enters a default under Rule 55(a). Fed. R. Civ. P. 55(b). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1, 55-2. Local Rule 55-1 requires that the movant submit a declaration establishing (a) when and against which party default was entered; (b) identification of the pleading to which default was entered; (c) whether the defaulting party is a minor, incompetent person, or active service member; (d) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and that (e) the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1. Finally, if the plaintiff seeks unliquidated damages, Local Rule 55-2 requires the plaintiff to give notice to the defaulting party of the amount sought. C.D. Cal. L.R. 55-2.

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider several factors, including: (1) the possibility of prejudice to a plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are

accepted as true, except those pertaining to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

### A. Procedural Requirements

The Court finds that the Trust Funds have complied with the relevant procedural requirements for the entry of a default judgment. Counsel submits a declaration attesting that: (a) the Clerk entered a default against WCB on September 11, 2019; (b) the default was entered on the original complaint filed by the Trust Funds on July 29, 2019; (c) WCB is not an infant or incompetent person; (d) WCB is not covered under the Servicemembers Civil Relief Act; and (e) the Trust Funds served WCB with notice of the request for entry of default (additional notice was not required per Local Rule 55-2). (Decl. of Marija Kristich Decker ("Decker Decl.") ¶¶ 7–11, ECF No. 18.) Accordingly, the procedural requirements are satisfied.

### B. *Eitel* Factors

The Court finds that the *Eitel* factors weigh in favor of entering a default judgment. The Court discusses each factor in turn.

#### 1. Plaintiffs Would Suffer Prejudice

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). As WCB has failed to appear in the action, if default judgment were denied, the Trust Funds would be unable to recover the delinquent contributions owed by WCB. Therefore, this factor favors entry of a default judgment.

#### 2. Plaintiffs Has Adequately Pleaded a Meritorious Claim

The second and third *Eitel* factors "require that a plaintiff 'state a claim on which [it] may recover.'" *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219

F.R.D. 494, 499 (C.D. Cal. 2003). The Trust Funds assert a claim for delinquent contributions under the Employee Retirement Income Security Act ("ERISA"). (Compl. ¶¶ 12–30.) Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also Winterrowd v. David Freedman & Co.,* 724 F.2d 823, 826 (9th Cir. 1984) (holding that employer's failure to contribute agreed-upon amount to pension fund covering agricultural workers was an ERISA violation). If the employer fails to make contributions as required, the plan or a plan fiduciary may bring an action to recover the unpaid contributions. *See* 29 U.S.C. § 1132(d)(1); *see e.g., Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, 42 F. Supp. 3d 1220 N.D. Cal. 2014).

Here, pursuant to the CBA, WCB must make contributions to a multiemployer plan, and submit true, complete, and accurate written monthly contribution reports. (*See* Ramos Decl. ¶ 11.) However, WCB failed to pay fringe benefit contributions for the months of September 2018 through February 2019. (*See* Ramos Decl. ¶ 14.) Furthermore, WCB failed to pay contributions for Mr. Sanders for work performed during the months of September 2018 through June 2019. (*See* Ramos Decl. ¶¶ 15, 16.) As an employer obligated under the terms of the CBA to make contributions to the Trust Funds, a multiemployer plan, WCB's failure to make such contributions constitutes a violation of ERISA section 515. *See* 29 U.S.C. § 1145. Thus, this factor weighs in favor of default judgment.

### 3. The Amount at Stake Weighs in Favor of Default Judgment

To determine whether the damages sought are proper for the scope of default judgment, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). The Trust Funds request fringe benefit contributions of $82,500.30, liquidated damages of $8,250.03, prejudgment interest of $4,471.32,

audit fees of $200.00, attorneys' fees of $12,717.25, and costs of $490.00. (Mot. 18.) Given that the evidence before the Court shows that Defendants failed to make benefit contributions to the Trust Funds as required under the CBA, thereby violating § 1145, and that the damages the Trust Funds request are allowed under § 1132, this factor weighs in favor of default judgment. *See* 29 U.S.C § 1145; 29 U.S.C § 1132(g).

### 4. There is No Possibility of Dispute as to Material Facts

As illustrated in the discussion of the second *Eitel* factor, the Trust Funds sufficiently allege that WCB failed to make benefit contributions as required under the CBA. It is well established that "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177. As WCB never responded to the complaint and introduced no evidence to counter the Trust Funds' claims, "no factual disputes exist that would preclude the entry of default judgment." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014).

### 5. There is Little Possibility Default was Due to Excusable Neglect

The Trust Funds effected proper service under Federal Rule of Civil Procedure 4(e) by personally serving authorized agent of WCB. (*See* Proof of Service.) As such, there is no evidence of excusable neglect because WCB was not only notified of the lawsuit, but also a possible entry of a default. Therefore, this factor also weighs in favor of default judgment.

### 6. Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. While this factor will always disfavor the entry of judgment, it alone does not outweigh the other factors that clearly favor entry of judgment. The Court thus concludes that the *Eitel* factors favor the Court entering a default judgment against WCB.

**C.  Amount of Judgment**

**1. Damages**

In an action to recover delinquent contributions, the Court must award the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Ninth Circuit has held that audit costs are recoverable under § 1132(g)(2)(E). *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes*, 559 F.2d at 560; *see also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[A]llegations of the amount of damages suffered are not necessarily taken as true."). For the purposes of a default judgment in an ERISA action, audit reports are sufficient to establish the amount of underpaid contributions, interest, and liquidated damages. *See Cent. Cal. IBEW/NECA Pension Tr. v. Ozzimo Elec., Inc.*, No. C 13-03800 JSW, 2015 WL 1883906, at *3 (N.D. Cal. Apr. 22, 2015); *Bd. of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. C & L Coatings, Inc.*, No. C 12-1368 PJH (MEJ), 2012 WL 7748318, at *7 (N.D. Cal. Dec. 18, 2012); *Bd. of Trs. v. KMA Concrete Const. Co.*, No. C-10-05774 JCS, 2011 WL 7446345, at *3 (N.D. Cal. Dec. 20, 2011). Courts have also considered monthly reports from contributors as well. *Bay Area Painters v. Alta Specialty*, No. C06-06996 MJJ, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008) (relying on monthly contribution reports

created by Defendants to calculate contributions owed). However, conclusory declarations alone are insufficient to support the amount of damages in a default judgment. *See Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, No. 3:05-CV-01809-HA, 2013 WL 4498829, at *1 (D. Or. Aug. 20, 2013), *aff'd in part, vacated in part sub nom. Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 630 F. App'x 655, 658 (9th Cir. 2015) (vacating the default judgment where Plaintiffs' own conclusory declarations were the basis of the damages calculation and a hearing was not held).

As far as the Court can tell, the Trust Funds seek the following amounts in damages:

| | | |
|---|---|---|
| Delinquent Fringe Benefit Contributions [Sept. 2018–Feb. 2019] | $17,915.40 | Ramos Decl. Ex. F[2] |
| Delinquent Flat Rate Contributions for Mr. Sanders [Sept. 2018–Sept. 2019] | $61,332.00 | Ramos Decl. ¶ 16. |
| Delinquent Fringe Benefit Contributions Found in the Audit [Jan. 2017–Feb. 2019] | $3252.90 | Ramos Decl. Ex. H |
| Interest | $4471.32 | Ramos Decl. Ex. I |
| Liquidated Damages | $8250.03 | Ramos Decl. ¶ 20 |
| Audit Fees | $200.00 | Ramos Decl. ¶ 21 |

---

[2] Declaration F includes only reports from September 2018 until January 2019. (*See* Ramos Decl. Ex. F.)

9

Audit reports were submitted to substantiate only the claim of $3,252.90 in delinquent fringe benefit contributions during January 2017 and February 2019. However, these contributions were not pleaded in the complaint. Courts cannot find parties in default of claims not alleged in the original complaint as the defendant would lack notice to defend such claims. A plaintiff's demand for relief must be specific, and the damages sought cannot be "different in kind, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 8(a)(3), 54(c); *see Chao v. Air Transp. Mfg. Co.*, No. CV 07-2782 GAF (PLAx), 2008 WL 11336119, at *5 (C.D. Cal. Oct. 30, 2008). Accordingly, the Court cannot grant default judgment as to the $3,252.90.

Furthermore, the Trust Funds submit a declaration from an employee of Operating Engineers Funds, which administers several of the Plaintiff trust funds, as the only evidence that WCB failed to make Flat Rate Contributions for Mr. Sanders between September 2018 through September 2019. (*See* Ramos Decl.) As the Trust Funds rely entirely on the conclusory statements in the declaration, the Court declines to grant default judgment as to the $61,332.00.

Finally, the Trust Funds assert that the Court should accept WCB's monthly reports provided to the Trust Funds as proof of its missed payments of fringe benefit contributions. (Mot. 3, 18.) For this claim, the Court finds the attached evidence satisfactory. *See Bay Area Painters*, 2008 WL 114931, at *4. Accordingly, the Court awards $17,915.40 in missed contribution payments. The Court also awards, $2343.14 in interest and $1791.54 in liquidated damages, adjusted to the awarded contributions, as well as the $200 in audit costs.[3] The Court awards **$22,250.08** in total.

### D. Attorneys' Fees

According to Local Rule 55-3, a judgment of this amount would entitle Plaintiff

---

[3] Liquidated Damages were calculated by taking 10% of the delinquent contributions. (*See* Mot. 9.) Interest was calculated by taking 8% per annum of the delinquent contributions. (*See* Mot. 8.)

to attorney's fees of $1200 plus 6% of the amount over $10,000.00. C.D. Cal. L.R. 55-3; s*ee e.g. Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Anzalone Masonry, Inc.*, 316 F. Supp. 3d 1192, 1203 (C.D. Cal. 2018); *Bd. of Directors of Motion Picture Indus. Pension Plan v. Supremacy The Movie, LLC*, No. 2:16-CV-00103-SVW-SS, 2016 WL 11527306, at *3 (C.D. Cal. June 2, 2016) (awarding attorneys' fees pursuant to Local Rule 55-3).

The Trust Funds request attorneys' fees in excess of the schedule.[4] (Mot. 9–15.) However, the Billing Records attached are riddled with administrative tasks and duplicative billing (Decker Decl. Ex. A "Billing Records"), and courts have reduced attorneys' fees for billing for administrative and clerical tasks. *See Helman v. Aetna Life Ins. Co.*, No. 217CV00975RGKAGR, 2018 WL 6118515, at *3 (C.D. Cal. May 21, 2018). Accordingly, the Court deems that an award of attorney's fees calculated based on the Local Rule schedule for the award of judgment is reasonable. This results in an award of **$1935** (6% of the amount over $10,000.00 ($12,250.08) equals $735, plus $1200.00) for Plaintiffs in attorneys' fees. The Court further awards the litigation costs of **$531.25**. (Decker Decl. ¶ 6.)

---

[4] The Trust Funds seek $12,717.25 in attorney's fees. (Mot. 12.)

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** Plaintiffs' Motion for Default Judgment as to Defendant WCB and awards the following:

1. **$22,250.08 in damages,**
2. **$531.25 in litigation costs, and**
3. **$1935 in attorney's fees.**

**IT IS SO ORDERED.**

January 14, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**